UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/13/15
```

-------------------------------------------------------------X

RICHARD FARMER,

                    Plaintiff,

     -v.-

HYDE YOUR EYES OPTICAL, INC., et al.,

                  Defendants.

-------------------------------------------------------------X

**OPINION AND ORDER**

13-CV-6653 (GBD) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

    Before the Court in this wage-and-hour and retaliatory discharge suit are two

motions of Defendants Hyde Your Eyes Optical, Inc. (d/b/a Pildes Optical), Pildes of

76th Street Inc. (d/b/a Pildes Optical), Jamar Optical Inc. (d/b/a Pildes Optical), Dr.

Daniel Pildes, O.D., Jay Pagirsky, and Dr. David Hyde, O.D. (hereinafter

"Defendants"). On October 29, 2014, Defendants moved for discovery sanctions against

Plaintiff Richard Farmer based on his violations of two court orders to produce certain

documents, including medical records and releases, pursuant to Rule 37(b)(2) of the

Federal Rules of Civil Procedure. Defendants sought an order precluding Farmer from

presenting evidence at trial regarding any medical, psychiatric, or psychological

treatment he alleges occurred as a result of his termination from Defendants'

employment, along with a warning from the Court that further willful noncompliance

could result in dismissal of his claims. Defendants also sought attorney's fees and costs

incurred in seeking Farmer's compliance with the Court's orders. While this motion

was pending, on January 28, 2015, Defendants moved to dismiss Farmer's claims with

prejudice for failure to prosecute after he failed to appear both for his deposition and a

subsequent court conference.  In the alternative, Defendants sought their costs arising from these delinquencies.  Following the motion to dismiss, Farmer retained new counsel (for the third time), who have submitted papers opposing both motions.

For the reasons set forth below, I grant Defendants' motions for monetary sanctions but deny their motions for the sanctions of preclusion or dismissal at this time.  Farmer is warned, however, that any further disregard of the Court's orders or neglect of his responsibilities as a litigant in this case will result in a recommendation to Judge Daniels that his claims be dismissed with prejudice.

## I.   BACKGROUND

Represented by counsel, Farmer filed this action on September 19, 2013 alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 1 et seq. (McKinney), for Defendants' failure to pay overtime compensation and for wrongful discharge following the termination of his employment after he commenced this suit.  See Complaint dated September 5, 2013 (Dkt. No. 1); Amended Complaint dated September 24, 2013 (Dkt. No. 3).  Farmer worked as a salesperson for Defendants, who are providers of eye care services, during the period beginning in approximately June 2008 to September 13, 2013, the date of Farmer's termination.  Amended Complaint ¶¶ 8-14, 19, 32.  Besides his sales work, Farmer alleges that he "was also required to perform additional training in his home, which resulted in an additional 40-60 hours of overtime per week, for which [Farmer] was not compensated."  Id. ¶ 27.  Farmer seeks unpaid overtime wages, liquidated damages, and damages for emotional distress as well as punitive damages pursuant to the FLSA and NYLL anti-retaliation provisions.

Discovery in the case has been protracted and contentious. The Court has adjudicated a number of disputes and extended the discovery deadline numerous times. (Dkt. Nos. 59, 64, 68, 87). Despite these extensions and irrespective of the latest deadline (which was January 16, 2015), discovery has been stalled since October 2014 due to Farmer's unwillingness to cooperate in the discovery process. Defendants first alerted the Court to Farmer's failure to fulfill his discovery obligations by letter dated July 7, 2014, while Farmer was proceeding pro se. Defs.' July 7 Letter-Motion (Dkt. No. 61).[1] When Farmer did not produce any documents responsive to several requests that Defendants assert are relevant to Farmer's claims regarding the hours he worked (which Defendants describe as "substantially all of his waking hours") and the financial and emotional damages he incurred after his termination, Defendants' counsel, Paul P. Rooney, Esq. ("Rooney"), made several attempts to meet and confer with Farmer. See generally id. After Defendants' attempts at communication proved unsuccessful, they sought the Court's intervention.

Thereafter, Farmer retained Peter M. Zirbes, Esq. ("Zirbes") and Jeffrey J. Estrella, Esq. ("Estrella"), and at the Court's direction, the parties met and conferred

---

[1] Farmer was represented by counsel when he filed this lawsuit, but his first attorney withdrew following an unsuccessful mediation in March 2014. (See Dkt. Nos. 29, 31). Thereafter, Farmer proceeded pro se for a period of time until July 2014 when he secured the representation of Peter M. Zirbes, Esq. and Jeffrey J. Estrella, Esq. (See Dkt. No. 63). As discussed infra, Zirbes and Estrella subsequently moved to withdraw as counsel for Farmer in October 2014, citing an irretrievable breakdown in the attorney-client relationship (Dkt. Nos. 76, 80, 84), which motions the Court granted on November 13, 2014. (Dkt. No. 86). Farmer then proceeded pro se once again until January 22, 2015, when Kevin K. Tung, Esq. filed a notice of appearance on Farmer's behalf, although neither he nor his client appeared at the court conference that took place on that day. (Dkt. No. 104). Subsequently, on February 25, 2015, Dennis M. Abrams, Esq. filed a notice of appearance as co-counsel for Farmer. (Dkt. No. 112).

3

three times in July, consummating in an agreement on July 20, 2014 that Farmer

would provide most of the documents Defendants sought by August 4 (and thus in

advance of Farmer's scheduled deposition on August 13). Order dated July 9, 2014

(Dkt. No. 64); Defs.' Aug. 26, 2014 Letter-Motion ("Defs.' Aug. 26 Letter-Motion") (Dkt.

No. 65), at 1; Pl.'s Sept. 8, 2014 Letter ("Pl.'s Sept. 8 Letter") (Dkt. No. 69).[2]  When

Farmer failed to provide any documents by August 4, Rooney contacted Zirbes,

prompting the production of some of the documents on August 7 and Zirbes' promise to

supply the rest by August 13. Defs.' Aug. 26 Letter-Motion at 1. By August 25,

Defendants had received no additional documents and Zirbes could not provide a firm

date by which they would be delivered, frustrating Defendants' efforts to take Farmer's

deposition, which had been delayed in light of this non-production. Id. at 2.

### 1. September 19, 2014 Hearing and Discovery Order

On August 26, 2014, Defendants, by letter-motion, sought a court order

compelling Farmer to produce the documents that he had agreed to produce on July 20.

The Court scheduled a hearing for September 19 to consider defendant's application

and directed Farmer to respond by September 8, explaining his bases, if any, for

objecting to Defendants' document requests. Order dated September 3, 2014 (Dkt. No.

---

[2] Farmer agreed to produce, inter alia: (1) all documents relating to the damages he
allegedly suffered; (2) all records concerning any medical, psychiatric or psychological
treatment he received from 2008 to the present or a medical release for each medical
provider consulted during that period; (3) documents relating to his sources of income
between 2008 and 2013, including federal and state income tax returns; (4) documents
regarding his pursuit and securing of employment after his employment with
Defendants ceased; (5) all versions of his résumé since June 2008; (6) documents
relating to any claims for unemployment, workers compensation, or disability benefits
filed throughout and following the cessation of his employment with Defendants; and
(7) cellular telephone records for the period between June 1, 2013 and September 30,
2014. Defs.' Aug. 26 Letter-Motion at 2-3.

66). Zirbes responded on September 8, citing scheduling difficulties and a lack of communication with his client as the reasons for his inability to comply with the production deadlines, commit to a new deadline, or reschedule Farmer's deposition (which already had been rescheduled for August 27). Pl.'s Sept. 8 Letter. Frustrated with this response, Defendants again wrote the Court, this time seeking fees incurred in making their application and asking that the Court include in any order to compel a warning that defiance of the order could lead to dismissal of Farmer's claims with prejudice. Defs.' Sept. 12, 2014 Letter (Dkt. No. 72).

At the September 19 hearing, Farmer did not raise any objections to producing the documents at issue and offered no clear explanation for why he had failed to deliver them earlier. Therefore, the Court issued an order compelling Farmer to produce the outstanding discovery by October 3. Order dated September 19, 2014 (Dkt. No. 73). The Court denied Defendants' fee application without prejudice to renewal should future circumstances warrant it, and declined to impose any other sanctions on Farmer in light of his anticipated cooperation. Id.

## 2. October 17, 2014 Hearing and Discovery Order

Regrettably but by this point perhaps unsurprisingly, October 3 came and went without the production of any documents or any communication from Farmer, prompting Defendants to seek another court conference to renew their fee application and request an order to show cause why Farmer's claims should not be dismissed for failure to comply with the Court's September 19 order. Defs.' Oct. 6, 2014 Letter-Motion (Dkt. No. 74). The Court scheduled another hearing for October 17 and directed Farmer to respond to Defendants' letter by October 15, explaining the cause for his

5

failure to comply. Order dated October 9, 2014 (Dkt. No. 75). Zirbes responded by letter on October 15, averring that Farmer had substantially complied with the Court's order by providing certain responsive documents, namely tax records, on October 6 (three days after the court-imposed deadline). Pl.'s Oct. 15, 2014 Letter ("Pl.'s Oct. 15 Letter") (Dkt. No. 77), at 1, 3 (attachment of Zirbes' Oct. 6 Production Cover Letter to Rooney) ("Ex. 1"); see also Affirmation of Paul P. Rooney in Support of Defs.' Motion to Compel ("Rooney Motion to Compel Affirmation") (Dkt. No. 83) ¶ 4. Nevertheless, several of the document requests enumerated in the September 19 order remained outstanding, and Zirbes provided no reason for the incomplete production other than his difficulty obtaining the documents from his client. Pl.'s Oct. 15 Letter, Ex. 1. In the same letter, Zirbes indicated that he intended to move to withdraw as Farmer's counsel because of an "irretrievable breakdown in the attorney client relationship." Id. at 2.

At the October 17 conference, the Court heard ex parte from both Farmer and Zirbes regarding the motion to withdraw, which the Court thereafter granted on the basis of the deterioration of the attorney-client relationship. See Memorandum Order dated November 13, 2014 (Dkt. No. 86). At the hearing (and in a subsequent order), the Court directed Farmer to produce the outstanding documents by October 24, 2014, to which he made no objection. See Order dated October 17, 2014 (Dkt. No. 78). The Court specifically informed Farmer that if he complied with this deadline, he would avoid sanctions; however, if he failed to comply with this directive, and given his violation of the previous order, he would be sanctioned. Id.; Transcript of Oct. 17, 2014 Proceeding at 33-34 (Dkt. No. 99).

### 3. Defendants' Motion to Compel to Which Farmer Failed to Respond

On October 29, 2014, after Farmer defied the Court's October 17, 2014 order

requiring him to produce the outstanding documents, Rooney Motion to Compel

Affirmation ¶ 5, Defendants filed the present motion to compel and for sanctions.  Defs.'

October 29, 2014 Motion to Compel ("Defs.' Motion to Compel") (Dkt. No. 81); Defs.'

Mem. of Law in Support of Motion to Compel ("Defs.' Motion to Compel Mem.") (Dkt.

No. 82); Rooney Motion to Compel Affirmation (Dkt. No. 83).  Upon granting Zirbes' and

Estrella's motions to withdraw (Dkt. No. 86), the Court issued an order on November

13, 2014, giving Farmer, now proceeding pro se again, until December 3, 2014 to

respond to Defendants' motion.  (Dkt. No. 87).

On December 9, the Court had received neither a response nor any

communication from Farmer.  This was unusual, as Farmer had always been actively

involved in litigating his case during those phases when he was proceeding pro se.

Additionally, copies of the Court's most recent orders mailed to Farmer's address listed

on the docket were returned to the Court as undeliverable.  The Court nonetheless

presumed that Farmer had received notice of these orders electronically, having been

granted permission to participate in electronic case filing in April 2014.  (Dkt. No. 38).

Accordingly, the Court issued a second order sua sponte granting Farmer another week,

until December 17, to respond or, at a minimum, to seek a further extension of time.

(Dkt. No. 90).  Although solicitous of the possibility that personal circumstances may

have prevented Farmer from meeting the briefing deadlines, the Court nonetheless

warned Farmer that he "ha[d] an obligation to update the Court regarding any change

in address, and that, upon proper motion, courts have dismissed cases for failure to

7

prosecute pursuant to Fed. R. Civ. P. 41(b) when a plaintiff has failed to update his last known address." Id. The Court received nothing from Farmer on December 17.

### 4. Farmer's Failure to Appear for his January 8 Deposition

On January 8, 2015, Defendants requested another court conference after Farmer failed to appear for his noticed deposition scheduled that day. Defs.' Jan. 8, 2015 Letter-Motion (Dkt. No. 101).[3] In the letter, Rooney described his unsuccessful efforts to contact Farmer by telephone, email, and postal mail, in order to schedule his deposition. Id. at 1; see also Affirmation of Paul P. Rooney in Support of Defs.' Motion to Dismiss for Failure to Prosecute ("Rooney Motion to Dismiss Affirmation") (Dkt. No. 107) ¶¶ 5, 6, Ex. B. Having received no response from Farmer, on December 23, 2014, Defendants served a deposition notice for January 8, 2015 at the address Farmer had on file with the Court and also emailed the notice to Farmer. Rooney Motion to Dismiss Affirmation ¶¶ 7, 8, Exs. A & B. Between December 23, 2014 and January 8, 2015, Rooney made several attempts to contact Farmer by telephone and email to notify him about the deposition. Id. ¶¶ 9, 10, 11, Ex. B. Farmer never responded to any of these communications. Id. ¶ 4, 11. On January 8, Defendants were ready for the deposition with a court reporter and videographer but Farmer did not appear. Id. ¶ 11. Consequently, Defendants sought leave to move for dismissal for failure to prosecute because of Farmer's "repeated and deliberate discovery violations and flouting of court orders." Defs.' Jan. 8, 2015 Letter-Motion, at 3.

The Court scheduled a pre-motion conference for January 22, 2015 and directed Farmer to appear at the conference "in order to be heard in opposition to Defendants'

---

[3] The letter is misdated as January 8, 2014.

8

anticipated motion." Order dated January 13, 2015 (Dkt. No. 102). In the order, the Court admonished Farmer that if he "continue[d] to ignore his responsibilities as a plaintiff in this lawsuit, the Court will be compelled to recommend dismissal of his case for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure to Judge Daniels." Id.

### 5. Farmer's Failure to Appear at the January 22 Court Conference and Aftermath

Farmer did not appear at the January 22, 2015 conference. As noted supra in footnote 1, Kevin K. Tung, Esq. ("Tung") filed a notice of appearance on behalf of Farmer on the evening of January 22; however, he provided no explanation to the Court as to why neither he nor his client had appeared at the conference that day. (Dkt. No. 104). Following the conference, the Court issued an order setting a briefing schedule for Defendants' motion to dismiss for failure to prosecute (Dkt. No. 103), and on January 28, 2015, Defendants so moved. Defs.' January 28, 2015 Motion to Dismiss for Failure to Prosecute ("Defs.' Motion to Dismiss") (Dkt. No. 105); Defs.' Mem. of Law in Support of Motion to Dismiss for Failure to Prosecute ("Defs.' Motion to Dismiss Mem.") (Dkt. No. 106); Rooney Motion to Dismiss Affirmation (Dkt. No. 107).

### 6. Farmer's New Representation and Belated Compliance with the Court's Orders

On February 13, 2015, Farmer filed an affidavit in opposition to Defendants' motion to dismiss. Affidavit of Richard Farmer in Opposition to Defendants' Motion to Dismiss ("Farmer Aff.") (Dkt. No. 108).[4] Farmer lays the blame for all of his discovery

---

[4] Because Farmer was no longer proceeding pro se and because his affidavit did not directly respond to Defendants' arguments, the Court directed his new counsel to

9

deficiencies on Zirbes, his former counsel. See generally id. He alleges that he never

refused to produce documents or participate in a deposition. Id. ¶ 6. Rather, he alleges

that Zirbes did not respond to his questions regarding what documents had already

been produced and received in discovery, and Zirbes canceled and rescheduled his

deposition without consulting him. Id. ¶¶ 6, 9. Furthermore, Farmer claims that, after

Zirbes' withdrawal, he never informed Farmer of upcoming deadlines or court

appearance dates, of the obligation to update the Court with his new mailing address,

or of the consequences of failing to participate in a deposition. Id. ¶¶ 6, 9, 12. Finally,

Farmer asserts that despite his "numerous demands," Zirbes had yet to return

Farmer's case file, preventing him from knowing the status of his case. Id. ¶ 10.[5]

With respect to the period of time between November 13, 2014 and February 13,

2015, when Farmer, then proceeding pro se, ceased all communication with Defendants

and the Court, he avers that he was "extremely overwhelmed" by Zirbes' actions and a

family emergency and consequently did not check email frequently and sometimes let

three or four weeks go by without checking. Id. ¶ 17, 21. He further claims that he was

not aware of the deposition Defendants scheduled for January 8, 2015 because he "did

not open or retrieve any emails" from the email account at which Rooney attempted to

contact him. Id. ¶ 17. Lastly, Farmer states that he did not receive any electronic

---

submit a memorandum of law in opposition to Defendants' motions (Dkt. No. 109),
which they did on February 27, 2015. (Dkt. Nos. 113-15).

[5] Zirbes filed a letter on March 10, 2015, briefly responding to Farmer's accusations.
(Dkt. No. 119). With regard to Farmer's case file, he explained that after taking over
the case, Farmer sent him a complete copy of the file via email, that he and Farmer
were in constant email communication, and that any materials he produced during his
short tenure as counsel should already be in Farmer's possession. Id.

notices of court filings because he could not remember the password to the email account he had linked to ECF. Id. ¶ 16.

Now, however, Farmer states that he has retained new counsel, id. ¶¶ 22, 23, and with their assistance, he is willing both to be deposed and to provide the documents requested by Defendants as soon as possible. Id. ¶ 31. In light of these recent events, Farmer argues that it would be unfair to sanction him. Id. ¶ 33.

In accordance with the Court's February 17 order (Dkt. No. 109), Farmer's new counsel, Tung and Dennis M. Abrams, Esq. ("Abrams"), submitted opposition papers to Defendants' motions on February 27, 2015. Pl.'s Mem. of Law in Opposition to Defendants' Motion to Dismiss for Failure to Prosecute (Dkt. No. 113); Affidavit of Kevin K. Tung in Opposition to Defendants' Motion to Dismiss (Dkt. No. 114); Pl.'s Mem. of Law in Opposition to Defendants' Motion to Compel ("Pl.'s Opp. to Motion to Compel Mem.") (Dkt. No. 116); Affidavit of Dennis M. Abrams in Opposition to Defendants' Motion to Compel ("Abrams Aff.") (Dkt. No. 115). Through counsel, Farmer represents that on February 27, he delivered to Defendants all of the outstanding documents they sought. Abrams Aff. ¶ 5. Furthermore, notwithstanding Defendants' authorization to access his medical records, Farmer avers that he has not been treated by a mental health professional since he was terminated by Defendants. Id. ¶ 5.b. Significantly, Farmer concedes that Defendants are entitled to at least part of their fees in moving to compel because Farmer cannot "rebut the presumption in favor of 'awarding sanctions against a party that complies with discovery demands after the

filing of a motion.'" Pl.'s Opp. to Motion to Compel Mem. at 5 (citation omitted).[6]
Farmer asks the Court, however, not to preclude him from presenting evidence of
medical or psychological treatment at trial or to impose a terminating sanction,
although he acknowledges the appropriateness of a warning that "he risks dismissal of
his claims if he again fails to comply with the orders of this Court." Id. at 6.

Defendants filed reply papers as to both their motions on March 9 and March 10,
2015. Defs.' Reply Mem. of Law in Support of Motion to Dismiss for Failure to
Prosecute ("Defs.' Motion to Dismiss Reply Mem.") (Dkt. No. 117); Reply Affirmation of
Paul P. Rooney in Support of Motion to Dismiss for Failure to Prosecute ("Rooney
Motion to Dismiss Reply Affirmation") (Dkt. No. 118); Defs.' Reply Mem. of Law in
Support of Motion to Compel ("Defs.' Motion to Compel Reply Mem.") (Dkt. No. 120);
Reply Affirmation of Paul P. Rooney in Support of Motion to Compel ("Rooney Motion to
Compel Reply Affirmation") (Dkt. No. 121). Defendants reiterate their application for
attorney's fees and expenses incurred in seeking Farmer's compliance with the Court's
orders, and, should the Court decline to dismiss Farmer's claims, they ask in the
alternative that it impose monetary sanctions for Farmer's failure to appear for his
deposition and at the January 22, 2015 court conference. See Defs.' Motion to Dismiss
Reply Mem. at 8; see generally Defs.' Motion to Compel Reply Mem.

---

[6] Plaintiff's counsel proposes, however, that the Court require Farmer to pay only half
of Defendants' reasonable attorney's fees in making the motion to compel (i.e. $360), but
does not address the other fees and costs sought by Defendants. Pl. Opp. to Motion to
Compel Mem. at 2, 6.

## II.   DISCUSSION

### A.   Rule 37 Discovery Sanctions

#### 1. Legal Standard

Compliance with discovery orders "is necessary to the integrity of our judicial process. A party who flouts such orders does so at his peril," Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 73 (2d Cir. 1988), and "all litigants, including pro ses, have an obligation to comply with court orders[.]" Agiwal v. Mid Island Mortgage Corp., 555 F.3d 298, 302 (2d Cir. 2009) (per curiam) (quoting Minotti v. Lensink, 895 F.2d 100, 103 (2d Cir.1990)) (internal quotation marks omitted). Under Rule 37(b)(2) of the Federal Rules of Civil Procedure, district courts have wide discretion to sanction parties that fail to obey discovery orders; such sanctions may include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," or if circumstances warrant, "dismissing the action in whole or in part." See Fed. R. Civ. P. 37(b)(2)(A). Rule 37 prescribes that sanctions be "just," such that "the severity of [the] sanction [is] commensurate with the non-compliance." Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007). Several factors guide the court's exercise of discretion, including: (1) the willfulness of the noncompliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of noncompliance; and (4) whether the noncompliant party was on notice of possible sanctions. See, e.g., Antonmarchi v. Consol. Edison Co. of New York, 514 F. App'x 33, 35 (2d Cir. 2013) (quoting Agiwal, 555 F.3d at 302).

13

Defendants argue that "there can be no doubt that Plaintiff's non-compliance is deliberate. As such, it merits sanctions." Defs. Motion to Compel Mem. at 4. The Court agrees. "The question . . . is therefore not whether sanctions are merited here, but what sanctions to impose under Rule 37." Doe v. Delta Airlines, Inc., No. 13-CV-6287 (PAE), 2015 WL 798031, at *7 (S.D.N.Y. Feb. 25, 2015).

### 2. The Court Declines to Impose a Preclusion Sanction under Rule 37

As a result of Farmer's failure to produce medical records releases for more than seven months despite the parties' agreement and two court orders compelling their production, Defendants seek to preclude him from presenting evidence at trial regarding any medical treatment he received as a result of his termination. Defs.' Motion to Compel Mem. at 6-7. Farmer, although citing no case authority, argues that preclusion of evidence of medical treatment is not warranted where he has not sought treatment from a mental health professional, and where, in any event, defense counsel has now obtained authorizations to request Farmer's medical records. Pl.'s Opp. to Motion to Compel Mem. at 5; Abrams Aff. ¶ 7. In fashioning the appropriate sanction, the Court considers each of the factors articulated by the Second Circuit in turn.

### a. Willfulness

Noncompliance with discovery orders is considered willful "when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." In re Fosamax Prods. Liab. Litig., No. 06-MD-1789 (JFK), 2013 WL 1176061, at *1-2 (S.D.N.Y. Mar. 21, 2013) (quoting Davis v. Artuz, No. 96-CV-7699 (GBD), 2001 WL 50887, at *3 (S.D.N.Y. Jan. 19, 2001)) (internal quotation marks omitted). "Willful non-compliance is routinely

found, for instance, where a party has 'repeatedly failed to . . . produce documents . . . in violation of the district court's orders.'" Delta Airlines, 2015 WL 798031, at *8 (quoting Robertson v. Dowbenko, 443 F. App'x 659, 661 (2d Cir. 2011) (summary order)); accord Battiste-Downie v. Covenant House, 471 F. App'x 78, 79 (2d Cir. 2012) (summary order) (willfulness found where plaintiff repeatedly defied discovery orders despite warnings that noncompliance was sanctionable); Embuscado v. DC Comics, 347 F. App'x 700, 701 (2d Cir. 2009) (summary order) (same); Davidson v. Dean, 204 F.R.D. 251, 255 (S.D.N.Y. 2001) (plaintiff's failure to provide medical release willful where he never claimed that he did not understand discovery orders, had ample opportunity to seek clarification regarding them, and provided only frivolous excuses for failing to comply).

The Court finds that Farmer's defiance of two discovery orders compelling document production was willful. The Court's orders have been clear, Farmer has understood them, and there is no evidence to suggest that his noncompliance was due to factors outside his control. Indeed, Farmer's belated production of all the outstanding documents on February 27, 2015, Abrams Aff. ¶ 5, indicates that he had the documents in his possession and he has not explained why he did not produce them earlier.

Farmer seeks to place the blame for his discovery violations on his former counsel, arguing, for instance, that Zirbes did not inform him of upcoming deadlines, court appearance dates, or the status of document production. Farmer Aff. ¶¶ 6, 9, 12. Farmer's arguments are entirely unavailing where he personally appeared at the September 19, 2014 and October 17, 2014 conferences, each prompted by his failure to produce the requested documents, and personally represented to the Court that he

understood he needed to produce the documents, did not object to their production on grounds of privilege or relevance, and did not attest to any practical obstacle preventing him from producing them to Defendants.[7]

Accordingly, Farmer's willful noncompliance with the Court's discovery orders and longstanding disregard for his discovery responsibilities support the imposition of sanctions.

### b. Efficacy of Lesser Sanctions

In evaluating the appropriateness of particular sanctions, "a court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future." Silva v. Cofresi, No. 13-CV-3200 (CM) (JCF), 2014 WL 3809095, at *3 (S.D.N.Y. Aug. 1, 2014) (declining to grant terminating sanction where party defied court order but subsequently responded, though dilatorily, to discovery requests) (citations omitted); accord Delta Airlines, 2015 WL 798031, at *9

---

[7] In the otherwise sealed portion of the October 17 transcript (due to discussions of the attorney-client relationship) the Court had the following exchange with Farmer:

> THE COURT: So why can't you produce these outstanding materials in the next week?
> MR. FARMER: I can, your Honor.
> THE COURT: Can you?
> MR. FARMER: Yes.
> THE COURT: A week from today?
> MR. FARMER: Yes.
> THE COURT: And if you don't, there are going to be sanctions.
> MR FARMER: I know. I understand, your Honor.
> THE COURT: Okay. And, believe me, I don't have any pleasure whatsoever in imposing sanctions on anybody, but these sanctions are going to run to you. Okay?
> MR. FARMER: I got it, your Honor.

Transcript of Oct. 17, 2014 Proceeding, at 25.

(imposing monetary sanctions instead of dismissal where plaintiff finally cured discovery deficiencies after violating six court orders).  At the same time, "deliberate and persistent noncompliance" may render "lesser sanctions inappropriate," Embuscado, 347 F. App'x at 701, and a "district court 'is not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record.'" Shcherbakovskiy v. Seitz, 450 F. App'x 87, 88 (2d Cir. 2011) (quoting S. New England Tel. Co. v. Global NAPs, Inc., 624 F.3d 123, 148 (2d Cir. 2010)).  "Even the most severe Rule 37 sanctions may be imposed . . . so long as a warning has been given that noncompliance can result in a sanction." S.E.C. v. Setteducate, 419 F. App'x 23, 24 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court finds that this factor favors the imposition of monetary sanctions rather than the more severe sanction of preclusion, which "is strong medicine," though "necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators." Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc., 295 F.R.D. 1, 5 (E.D.N.Y. 2013) (quoting Daval Steel Prods., 951 F.2d at 1367).  "When a party seeks to frustrate [the purpose of the discovery provisions of the Federal Rules of Civil Procedure] by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate." Daval Steel Prods., 951 F.2d at 1365 (citation omitted).  "Preclusionary orders ensure that a party will not be able to profit from its own failure to comply." JSC Foreign Econ. Ass'n Technostroyexport, 2005 WL 1958361, at *10 (quoting Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d

Cir. 1979)) (additional citations omitted).  Before granting the extreme sanction of preclusion, however, the Court "should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses."  Outley v. New York, 837 F.2d 587, 591 (2d Cir. 1988) (directing district courts to consider centrality of the evidence sought to be precluded, prejudice to inconvenienced party, and administrative difficulty that court would face).

Farmer seeks emotional distress damages allegedly arising from his discharge and consequently has put his mental state at issue in this action.  Defendants argue that Farmer's failure to produce medical records or an authorization for their release "frustrated [their] ability to investigate those records," and thus defend against potential emotional damages claims.  Defs.' Motion to Compel Mem. at 6.  Before Farmer complied with the Court's orders, Defendants would likely have suffered prejudice.  At present, however, Defendants have all pertinent records at their disposal and Farmer's deposition is still to be taken.  Abrams Aff. ¶ 7.  Moreover, it appears that Farmer may not have received treatment from a mental health professional following his termination, Pl.'s Opp. to Motion to Compel Mem. at 5, rendering a preclusion sanction potentially moot.  Finally, the Court is not persuaded that lesser sanctions will be ineffectual.  Farmer has not previously been sanctioned.  "[T]here is no indication that lesser sanctions will not be effective in ensuring [Farmer's] compliance with further orders of this Court."  Dragon Yu Bag Mfg. Co. v. Brand Sci., LLC, 282 F.R.D. 343, 345 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).  Monetary sanctions, such as the Court will grant here, "when visited on an individual plaintiff, cannot be discounted as meek."  Delta Airlines, 2015 WL 798031, at *9; see also Ritchie

18

Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D.
147,162 (S.D.N.Y. 2012) (imposing monetary sanctions for plaintiffs' discovery
violations instead of harsher sanction of preclusion).

### c. Duration of Noncompliance

It cannot be denied that Farmer's failure to comply with his discovery obligations
and the Court's orders has been longstanding, dating back to June 23, 2014 when
Defendants first notified Farmer of the deficiencies in his responses to their document
requests.  Rooney Motion to Compel Affirmation ¶ 11.  Over the course of more than
four months leading up to Defendants' motion to compel, filed on October 29, 2014,
Defendants sought the Court's intervention a number of times.  Two hearings and two
court orders failed to induce Farmer's compliance.  Farmer subsequently ignored three
more orders directing him to respond to Defendants' motions and to update his address
after copies of the Court's orders sent to his address were returned as undeliverable.
(Dkt. Nos. 87, 90, 102).  Farmer's actions stymied Defendants' attempts to complete
document discovery and to schedule his deposition.  Noncompliance for a period of three
months or longer may be sufficient to warrant even the most severe sanctions of
dismissal or default.  See, e.g., Embuscado, 347 F. App'x at 701 (affirming dismissal
after three months of noncompliance); Phelan v. Campbell, 507 F. App'x 14, 16 (2d Cir.
2013) (summary order) (affirming dismissal after seven months of noncompliance).
Farmer's delay of eight months in curing his discovery deficiencies is sufficiently long to
justify sanctions.

### d. Farmer's Notice of Impending Sanctions

Farmer received ample notice that his continued noncompliance would result in sanctions. At the October 17, 2014 conference, as noted, and in a subsequent order, the Court admonished Farmer that "[S]hould [he] fail to comply with this order . . . the result will be the imposition of sanctions." Order dated Oct. 17, 2014 (Dkt. No. 78). Moreover, Farmer has been on notice of Defendants' requests for sanctions since their September 12, 2014 letter to the Court, which sought monetary sanctions, an order to compel, and a warning that further discovery misconduct could result in the dismissal of his claims. (Dkt. No. 72). The Court twice denied Defendants' request for sanctions without prejudice to renewal, choosing instead to provide Farmer with additional opportunities to cure his discovery deficiencies. (Dkt. Nos. 73, 78). All of these warnings came before Farmer's four-month disappearance between the end of October 2014 and February 2015, during which he admittedly neglected to check emails, voicemails, or the Court's docket for upcoming deadlines. Farmer Aff. ¶¶ 13, 16, 17.

Given the Court's multiple warnings to Farmer that further noncompliance would result in sanctions—the last being unequivocal—this factor supports imposing sanctions. At the same time, the Court did not specify what sanctions it might impose. Therefore, ordering Farmer "to reimburse [Defendants] for expenses caused by [his] failure to cooperate," which is the "mildest" of sanctions, JSC Foreign Econ. Ass'n Technostroyexport, 2005 WL 1958361, at *10, is a just remedy, even if harsher sanctions might also be appropriate on the current record.

### 3. Fee-Shifting Sanctions Are Warranted Based on Farmer's Record of Noncompliance and Dereliction of his Litigation Responsibilities

Because Farmer provided the discovery sought only after Defendants filed their two motions and after he disregarded multiple court orders, fee-shifting sanctions are not only appropriate, they are mandatory under Rule 37, unless Farmer's nondisclosure was "substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A); 37(b)(2)(C); see also Novak v. Wolpoff & Abramson LLP, 536 F.3d 175, 178 (2d Cir. 2008) (per curiam); Underdog Trucking, L.L.C. v. Verizon Servs. Corp., 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (Rule 37 sets forth rebuttable presumption in favor of imposing fee-shifting sanctions against party disobeying discovery order). "Fee-shifting is appropriate even if the discovering party ultimately obtains, through Herculian and expensive effort, the discovery to which it was entitled." Underdog Trucking, L.L.C., 273 F.R.D. at 379 (internal quotation marks and citations omitted). Nondisclosure is substantially justified "if there was a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the contested action." Id. at 377 (citing Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp., 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (denying sanctions motion where opposing party raised valid relevancy objections to document requests)).

Although Farmer does not contest that the Court should award Defendants some portion of their fees and costs, see Pl.'s Opp. to Motion to Compel Mem. at 5-6, the Court will briefly address the justifications for his discovery misconduct that he offers in his affidavit in opposition to Defendants' motion to dismiss. These justifications neither challenge the relevancy of Defendants' discovery requests nor invoke any privilege over the documents at issue; instead, in his affidavit Farmer seeks to excuse

his derelictions by faulting the representation of his former counsel. Farmer claims

that while he "never refused to produce documents or participate in a deposition,"

Farmer Aff. ¶ 6, Zirbes impeded the discovery process by failing to respond to his

questions regarding the status of document production, id. ¶ 9, and by changing the

date of his deposition without consulting him, id. ¶ 6. Furthermore, Farmer claims that

after Zirbes withdrew as counsel, he never informed Farmer of upcoming deadlines,

court appearance dates, or the obligation to update the Court regarding a change in his

mailing address. Id. ¶¶ 6, 12, 13.

     The Court is not persuaded by these arguments. First, the Court observes that,

in granting Zirbes' motion to withdraw, it credited his description of the deterioration of

the attorney-client relationship, which was caused in large part by Farmer's failure to

furnish his counsel with the necessary documents and information to comply with

Farmer's discovery obligations. See November 11, 2014 Memorandum Order (Dkt. No.

86), at 3-4. Equally notable is that Farmer's sworn statements, rather than disputing

this description, merely seek to gloss over his own involvement in committing these

discovery violations by shifting the onus onto his former counsel. Furthermore, Farmer

cannot feign complete ignorance of his responsibilities as a litigant where he attended

two court conferences (each followed by a written order of which he received a copy),

during which the Court plainly explained his discovery obligations, the deadlines by

which he must meet them, and the consequences of failing to comply. See, e.g.,

Handwerker v. AT & T Corp., 285 F. Supp. 2d 331, 333 (S.D.N.Y. 2002) (in relation to

dismissal sanction, plaintiff's allegations that former counsel failed to adequately

apprise her of discovery obligations were "disingenuous and unpersuasive" where on

numerous occasions court had directly admonished her to produce compelled discovery and warned her of consequences of not complying) aff'd, 93 F. App'x 328 (2d Cir. 2004).

Even if Zirbes' representation fell short of Farmer's expectations, "[t]he acts and omissions of counsel are normally wholly attributable to the client, and sanctions may be imposed against a party for [his] counsel's misconduct." Mikhlyn v. Bove, No. 08-CV-3367 (ARR) (RER), 2011 WL 4529613, at *4 (E.D.N.Y. Sept. 28, 2011) (citations and internal quotation marks omitted); accord Cine Forty-Second St. Theatre Corp. 602 F.2d at 1068 n.10 (citing Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962)); Masi v. Steely, 242 F.R.D. 278, 286 (S.D.N.Y. 2007) (quoting Am. Cash Card Corp. v. AT & T Corp., No. 99-7894, 2000 WL 357670 (Table), at *5 (2d Cir. Apr. 6, 2000)) ("A litigant chooses counsel at his peril, and . . . counsel's disregard of his professional responsibilities can lead to extinction of his client's claim" on motion for Rule 37(b) sanctions. (alteration omitted)).[8]

---

[8] Although conceding that he is liable for monetary sanctions, Farmer argues that he should be ordered to pay only half of Defendants' reasonable attorney's fees because Fed. R. Civ. P. 37(a)(5)(A) and 37(b)(2)(E) provide that a court may impose monetary sanctions against the delinquent party, his attorney, or both. Pl.'s Opp. to Motion to Compel Mem. at 5-6. Without citing any legal authority, Farmer seems to be arguing that he should not have to pay Defendants' entire fees and costs because his attorney might be partially to blame for his discovery delinquencies. Id. at 5. This argument is without merit. "District courts have broad discretion to determine a fee award based on the circumstances of a case." Underdog Trucking, L.L.C. v. Verizon Servs. Corp., 276 F.R.D. 105, 108 (S.D.N.Y. 2011) (citations omitted). Whatever fault for Farmer's discovery violations may lie with his former counsel, and it is not clear from the record that there is any, there is nothing in the record to indicate that it rises to the level of sanctionable conduct. Cf. Kramer v. Arms, No. 96-7448, 1997 WL 85830 (Table), at *1 (2d Cir. Feb. 27, 1997) (affirming monetary sanction against attorney for his "delay and obstruction . . . and willful disregard of the Court's discovery orders"); Rouson v. Eicoff, No. 04-CV-2734 (ARR) (KAM), 2007 WL 1827422, at *10 (E.D.N.Y. June 25, 2007) (imposing monetary sanctions against defendants' counsel who repeatedly violated court orders requiring production of expert report and attempted to obfuscate noncompliance by submitting deficient report).

In addition to Farmer's failure to comply with the Court's orders compelling document production, the Court finds that Farmer's failure to appear for his deposition and at a court conference justify monetary sanctions. See Fed. R. Civ. P. 37(d)(1)(A)(i) ("The court may . . . on motion, order sanctions if: (i) a party . . . fails, after being served with proper notice, to appear for that person's deposition[.]"); Fed. R. Civ. P. 16(f)(1)(A) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: (A) fails to appear at a scheduling or other pretrial conference[.]").[9]  Accordingly, the Court will award monetary sanctions for these discovery violations as well "under principles of just compensation, to put [Defendants] in the monetary position [they] would have been in but for [Farmer's] non-compliance." Delta Airlines, 2015 WL 798031, at *11.

## B. Farmer's Claims Should Not Be Dismissed for Failure to Prosecute at this Juncture

### 1. Legal Standard

When a plaintiff fails to diligently advance his case, his suit may be dismissed with prejudice as a sanction for such dereliction. See, e.g., United States ex rel. Pervez

---

[9] Farmer complains that Defendants "unilaterally scheduled" his deposition. Farmer. Aff. ¶ 20.  However, a notice to take a deposition is all that is necessary to compel a party to attend a deposition. See, e.g., 2 Michael C. Silberberg, Civil Practice in the Southern District of New York, § 17.13 at 17-42 (2d ed. 2001).  Moreover, so long as a notice of a deposition date is "reasonable" under Fed. R. Civ. P. 30(b), the date is binding, and a party cannot simply ignore a notice.  Although the reasonableness of notice is a fact-sensitive inquiry, judges in this District have concluded that as few as four and eight days notice of a deposition to a party is reasonable. Davidson, 204 F.R.D. at 256.  The twelve days notice that Defendants provided here falls well within the reasonable range.  Moreover, Defendants made several attempts to communicate with Farmer, both prior to serving their notice on December 23, 2014 and subsequently, to remind him of the deposition on January 8, 2015.

v. Maimonides Med. Ctr., 415 F. App'x 316, 317 (2d Cir. 2011) (dismissal proper where plaintiff has allowed action to lie dormant without any significant activity or has engaged in pattern of dilatory tactics) (citing Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42 (2d Cir. 1982)).  Pursuant to Federal Rule of Civil Procedure 41(b), a court may dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order."

As with Rule 37(b)(2)(A) sanctions, dismissal pursuant to Rule 41(b) is committed to the discretion of the district court, see, e.g., Dungan v. Donahue, No. 12-CV-5139 (ILG) (RLM), 2014 WL 2941240, at *5 (E.D.N.Y. June 30, 2014), and has been characterized as "the harshest of sanctions" that "should be used only in extreme situations," particularly when the fault is of a pro se litigant. Baptiste v. Sommers, 768 F.3d 212, 217 (2d Cir. 2014) (internal quotation marks and citation omitted).

When considering whether to dismiss a complaint pursuant to Rule 41(b), a court "must weigh five factors:  (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal." Baptiste, 768 F.3d at 216 (quoting Lucas, 84 F.3d at 535) (internal quotation marks omitted).  However, no single factor is dispositive, and the court should consider all the facts and circumstances of the case. Id.

### 2.  Farmer's Conduct Warrants a Monetary Sanction, Not Dismissal

There is substantial overlap between the factors commonly considered in

deciding whether to dismiss an action under Rule 41(b) and to impose a sanction under

Rule 37(b)(2)(A).  Therefore, the Court will not repeat its prior discussion of these

factors in great detail.  To summarize, between October 2014 and February 2015,

Farmer allowed his case to languish completely:  he ignored all communications from

opposing counsel and the Court; failed to update the Court of his change in address;

disregarded multiple discovery and motion deadlines, and did not appear at either his

deposition or at a court conference.  These actions reflect a willful neglect of his case

and a complete disregard for the time and resources of the Court and his adversary.

Such conduct has often been deemed grounds for dismissal for failure to prosecute.  See,

e.g., Ampudia v. Lloyd, 531 F. App'x 32, 34-35 (2d Cir. 2013) (affirming dismissal of pro

se plaintiff's case after he failed to appear for scheduled deposition and prematurely

terminated rescheduled deposition); Crawn v. Town of Wallkill, No. 07-CV-1032 (GAY),

2013 WL 3227216, at *2 (S.D.N.Y. June 26, 2013) (dismissing plaintiff's case after he

failed to appear at two court conferences and took no steps to prosecute case for nearly

four months); Holcombe v. Skupien, No. 14-CV-1448 (PAC) (JLC), 2014 WL 6879077, at

*4 (S.D.N.Y. Dec. 5, 2014) adopted, 2015 WL 524992 (S.D.N.Y. Feb. 9, 2015) (dismissing

case where plaintiff failed to update address); Brown v. Smith, No. 13-CV-4694 (AT),

2014 WL 5040908, at *2 (S.D.N.Y. Sept. 30, 2014) (same).

Nevertheless, the posture of this case has changed.  Farmer has secured new

representation, responded to Defendants' outstanding motions, appears to be in

compliance with the Court's discovery orders, albeit belatedly, and has said that he is

26

willing to be deposed by Defendants and is otherwise ready to prosecute this action. See Farmer Aff. ¶ 31; Abrams Aff. ¶ 5. Cf. Jerez v. Semidey, No. 13-CV-8822 (AT) (FM), 2015 WL 362847, at *2-3 (S.D.N.Y. Jan. 23, 2015) (dismissal on Rule 41(b) motion where pro se plaintiff never responded to defendants' discovery requests, refused to appear at telephonic court conference, and subsequently ceased all communication with court and defendants). In cases where plaintiffs have shown a renewed interest in prosecuting their claims following a period of dormancy, courts have found dismissal under Rule 41(b) to be unwarranted. See, e.g., Baptiste, 768 F.3d at 217-18, 219 (dismissal found to be abuse of discretion where plaintiff complied with court's orders after obtaining new counsel); Norfleet v. City of New York, No. 12-CV-4637 (ER), 2015 WL 765948, at *6 (S.D.N.Y. Feb. 23, 2015) (reinstating previously dismissed plaintiffs after their recent communications with court indicated willingness to prosecute their claims); Smith v. Anthony, No. 95-CV-8374 (DAB), 2007 WL 895143, at *2-3 (S.D.N.Y. Mar. 21, 2007) (denying motion where, despite substantial delay in complying with court orders, plaintiff retained new counsel and stated that he would be ready to try action in due course).

While prejudice to defendants resulting from unreasonable delay may be presumed, in cases where "delay is more moderate or excusable, the need to show actual prejudice is proportionally greater." U.S. ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 256 (2d Cir. 2004) (internal quotation marks and citation omitted). As discussed supra, the prejudice to Defendants has been largely cured by Farmer's belated compliance. And, as to the balancing of judicial efficiency with Farmer's right to be heard, it is the Court's understanding that Farmer's deposition is the only

outstanding item remaining in discovery, and once it is completed, his case will be ready to proceed to motion practice and/or trial.

Consequently, the Court is hopeful that the monetary sanctions that the Court will impose on Farmer will be sufficient to deter future misconduct. However, if these sanctions prove ineffective, Farmer is hereby placed on notice that any further violations of the Court's orders will result in a recommendation to Judge Daniels that his claims be dismissed with prejudice pursuant to Rule 37(b)(2)(A)(v).

## C.    Calculation of Monetary Sanctions

Having determined that Defendants are entitled to recoup reasonable attorney's fees and expenses incurred in relation to their instant motions, the Court next considers the reasonableness of the amount sought. Specifically, Defendants seek attorney's fees in the amount of $2,160 and costs in the amount of $350, for a total award of $2,510 broken down as follows:

| | |
|---|---|
| Attendance at 10/17/14 conference to obtain order to compel (1 hour) | $360.00 |
| Instant motion to compel filed 10/29/14 (2 hours) | $720.00 |
| Reply in further support of motion to compel (1 hour) | $360.00 |
| Preparation for and communication with Plaintiff re: 1/8/15 Deposition (1 hour) | $360.00 |
| Attendance at 1/22/15 pre-motion conference on instant motion to dismiss for failure to prosecute (1 hour) | $360.00 |
| Court Reporter's Fee – 1/8/15 Deposition | $125.00 |
| Videographer's Fee – 1/8/15 Deposition | $225.00 |
| **TOTAL** | **$2,510.00** |

Rooney Motion to Compel Reply Affirmation ¶14, Exs. C & D.

### a.   Attorney's Fees

District courts have broad discretion in determining reasonable attorney's fees, see Hensley v. Eckerhart, 461 U.S. 424, 437 (1983), and the standard method for determining the amount involves calculation of the "lodestar" figure. See, e.g., Perdue

v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1672-73 (2010); Arbor Hill Concerned

Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).

The lodestar amount is calculated by multiplying a reasonable hourly rate by the

number of hours reasonably expended on the litigation.  Underdog Trucking, L.L.C.,

276 F.R.D. at 108 (citations omitted).

Defendants seek an hourly rate of $360 for work performed by Rooney, a partner

at Ellenoff, Grossman & Schole LLP.  See Rooney Motion to Compel Reply Affirmation

¶¶ 1, 14.  In determining whether an hourly rate is reasonable, courts in this circuit

typically apply the prevailing rate within the district for similar services by lawyers of

comparable experience and skill.  Galeana v. Lemongrass on Broadway Corp., No. 10-

CV-7270 (GBD) (MHD), 2014 WL 1364493, at *13-14 (S.D.N.Y. Apr. 4, 2014).  "Courts

in this District have determined in recent cases that a fee ranging from $250 to $450 is

appropriate for experienced litigators in wage-and-hour cases."  Yuquilema v.

Manhattan's Hero Corp., No. 13-CV-461 (WHP) (JLC), 2014 WL 4207106, at *14

(S.D.N.Y. Aug. 20, 2014) (citing cases) adopted, 2014 WL 5039428 (S.D.N.Y. Sept. 30,

2014).  The Court finds that $360 is a reasonable rate to charge for an experienced

litigator such as Rooney.[10]  Therefore, Defendants are entitled to recover fees for

Rooney's work at the rate of $360 per hour.

---

[10] Although Rooney has failed to provide information about the extent of his legal
experience or his expertise in FLSA cases, I have taken judicial notice of the date of his
admission provided in the records of the New York State Unified Court System, which
is publicly available on its website.  See, e.g., Dunn v. Advanced Credit Recovery Inc.,
No. 11-CV-4023 (PAE) (JLC), 2012 WL 676350, at *6 (S.D.N.Y. Mar. 1, 2012) adopted,
2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012).  According to these records, Rooney was
admitted to practice in 1999, and therefore has been licensed for at least 16 years.  See
Attorney Directory–Attorney Search,
http://iapps.courts.state.ny.us/attorney/AttorneySearch (last visited on May 12, 2015).

In determining a reasonable number of hours expended, the court "should look at the amount of time spent on each task, and then decide how much of that time was reasonably expended given the scope and complexity of the particular litigation." Short v. Manhattan Apartments, Inc., 286 F.R.D. 248, 256 (S.D.N.Y. 2012) (quoting N.Y. Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983)) (internal quotation marks omitted).  The court must exclude hours that are "excessive, redundant, or otherwise unnecessary." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Hensley, 461 U.S. at 424) (internal quotation marks omitted).  Here, Defendants' billing records submitted in support of their application reflect a total of six billable hours spent completing five discrete tasks, which include attendance at two court conferences, filing papers in the instant motion to compel, and preparing for the January 8, 2015 deposition that Farmer failed to attend.  Rooney Motion to Compel Reply Affirmation ¶ 14, Ex. C.  None of the hours documented is for duplicative or purely clerical work. Cf., e.g., Gurung v. Malhotra, 851 F. Supp. 2d 583, 598 (S.D.N.Y. 2012) (reducing legal fees sought by 25% because of excessive and duplicative billing); Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 476-77 (S.D.N.Y. 2009) (reducing attorney's fees sought by 15% for excessive billing and for time spent on purely clerical tasks).  Moreover, the total number of hours accounted for is modest given what needed to be done. Galeana, 2014 WL 1364493, at *14.  Accordingly, Defendants are entitled to recover attorney's fees for all six hours.

### b. Costs

Defendants seek reimbursement of $350.00 for the fees charged by the court reporter and videographer retained for Farmer's attempted deposition on January 8,

30

2015, and have submitted invoices from U.S. Legal Support in support of their request. Rooney Motion to Compel Reply Affirmation ¶14, Ex. D.  These costs are reasonable, well-documented, and would ordinarily have been charged to the client.  See Underdog Trucking, L.L.C., 276 F.R.D. at 115 (citing LeBlanc–Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998)). Accordingly, Defendants' request for costs is granted in full.

## III.   CONCLUSION

For the foregoing reasons, Defendants' application for monetary sanctions is granted.  Defendants' motions for a preclusion sanction under Rule 37(b)(2)(A)(ii) and for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure are denied. Defendants may renew their motion for a terminating sanction should Farmer demonstrate any further dereliction of his responsibilities as a litigant in this action.

Farmer's counsel is hereby directed to provide a copy of this Opinion and Order to Farmer forthwith.  Farmer is directed to pay the monetary sanction of $2,510.00 within 21 days of the date of this Opinion and Order.

The Clerk of the Court is respectfully directed to close the motions at Docket Numbers 81 and 105.

**SO ORDERED.**

Dated: New York, New York
      May 13, 2015

JAMES L. COTT
United States Magistrate Judge

31